# Lewis et al., Receivers, &c. *versus* Hollahan.

103  425
139  35

1. The second section of the Act of April 4th 1868 (P. L. 58), limiting the liability of railroad companies to $5,000 in case of death caused by their negligence, was a general law, applicable to non-accepting as well as to accepting carriers or corporations of the class therein mentioned. The only effect of a refusal to accept its provisions was to deprive the non-accepting corporation of the means of indemnity provided in the third section of the said Act, and also of the benefits resulting from a modification of its charter as provided for in the fourth section.

2. Said second section of said Act was avoided by Art. III., § 21 of the Constitution of 1874.

3. Pennsylvania Railroad Co. *v.* Langdon, 11 Norris 34, commented on.

April 24th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Bucks county :* Of January Term 1883, No. 412.

Case, by Amy K. Hollahan et al., widow and minor children of Michael Hollahan, deceased, against Edwin K. Lewis, Franklin B. Gowen and Stephen A. Caldwell, receivers of the Philadelphia and Reading Railroad Company, to recover damages for the death of said Michael Hollahan, through the alleged negligence of defendants in the management of their trains.

On the trial, before WATSON, P. J., the only question at issue was the extent of defendants' liability, the fact of their negligence being admitted. No points were presented by either of the parties, but the court, in answer to an oral request of the defendants to instruct the jury to limit the damages to $5,000 and interest thereon, under the Act of April 4th 1868, charged that the said Act was avoided by Art. III. § 21, of the Constitution of 1874, and that therefore the jury should estimate the damages without respect to its provisions.

Verdict for the plaintiffs for $12,268.66 and judgment thereon. The defendants thereupon took this writ of error, assigning for error the said instruction of the court.

*George Lear* (*H. Lear* with him), for the plaintiff in error. —It was authoritatively decided in Pennsylvania R. R. Co. *v.* Langdon, 11 Norris 21, that the limit of $5,000 for the loss of

life, fixed by the Act of 1868, was not avoided by the new Constitution in reference to any corporation, and secondly, that the Constitution could not repeal the Act as to companies which had accepted its provisions prior to the adoption of the Constitution. Subsequently, in Philadelphia & Reading R. R. Co. *v.* Boyer, 1 Out. 91, a doubt was expressed on these points, but the questions were passed without decision, the case being decided upon other grounds. They now again present themselves for adjudication. Whether the Act of 1868 applies to non-accepting companies, can hardly be an open question, for it clearly appears, that in numerous cases where it has not appeared on the trial or in the discussion, whether it had or had not been formally accepted by the litigant companies, its provisions have been acted upon in determining the status of the parties under the first section, and as a basis for determining the measure and amount of damages under the second. In the North Pennsylvania Railroad Company *v.* Kirk, 9 Norris 15 ; Cummings *v.* Pittsburg, Cincinnati and St. Louis Railway Company, 11 Norris 82 ; and in Mulherrin *v.* Delaware, Lackawanna and Western Railroad Co., 31 P. F. Smith 366, the provisions of the first section of the Act were applied to the cases of the plaintiffs to determine whether they stood in the relation of employees to the respective companies. And in the Pennsylvania Railroad Co. *v.* Keller, 17 P. F. Smith 300, where it did not appear in the case that the provisions of the Act had been accepted, the chief justice declared that Act to be with the Act of 1855 a system for determining the compensation for the loss of life ; and in the case of the Cleveland and Pittsburg Railroad Co. *v.* Rowan and Wife, 16 P. F. Smith 393, Thompson, C. J., in delivering the opinion of the court, quoted the rule as stated in the Act of 1868 for estimating the compensation, and added, " I understand this to have been the rule prior to the passage of the Act, notwithstanding a dictum or two to the contrary. It is now the rule of this statute, and as such to be obeyed where the action is for loss of life."

[Mercur, C. J. Did it appear in evidence that this company had accepted the Act of 1868 ?]

There was no evidence on the subject, but the company has not accepted the Act. Assuming it as decided that the Act of 1868 is a general one, and applies as well to non-accepting as accepting companies, the other question suggested by the Boyer case recurs to us, viz : Has the new Constitution repealed this Act ? Laws which were in existence at the adoption of the Constitution, although in conflict with its provisions, were not ipso facto repealed by its adoption, but will remain in force until superseded or repealed by laws enacted in pursuance of, and in accordance with, its requirements and provisions. The Consti-

[Lewis v. Hollahan.]

tution is prospective in its operation, and, so far as it affects the legislative power of the Commonwealth, it is principally for the future restraint and guidance of the Legislature, prohibiting the enactment of certain classes of laws, and inviting legislative action in the reformation of others, but leaving past legislation unaffected and undisturbed by its provisions, excepting where unequivocal words of repeal or avoidance are used, notwithstanding such legislation of the past could not be enacted under the Constitution of the present : Kitty Roup's case, 32 P. F. Smith 211; Lehigh Iron Company v. Lower Macungie Township, 31 P. F. Smith 482; Germania Life Insurance Company v. Commonwealth of Pennsylvania, 4 Norris 513; Wattson v. Chester and Delaware River Railroad Co., 2 Norris 254; Books v. Borough of Danville, 14 Norris 158; County of Alleghany v. Gibson, 9 Norris 397; Indiana County v. Agricultural Society, 4 Norris 357; Perkins v. Slack, 5 Norris 270; Commonwealth ex rel. Chase v. Harding, 6 Norris 343; Coatesville Gas Co. v. County of Chester, 1 Outerbridge 476.

A reference to the Journal of the Constitutional Convention will show that the members of that body did not intend to repeal the second section of the Act of 1868. A member, Mr. Hay, seeing the insufficiency of § 21 of art. III. of the proposed Constitution to repeal the Act of 1868, proposed an amendment to cover that view of the case. His proposition was to strike out the words in the last line, " so limiting or prescribing," and to insert the words, " inconsistent with this section." " Then," he said, " there will be no possibility of misunderstanding what is the meaning of this phraselogy." The question was put on that amendement, and it was rejected, (5 Debates, 292–3). There is no possibility of misunderstanding the meaning of the Convention on that subject. The members did not mean to avoid any law except that which limited the time of bringing suit. They refused to avoid " existing laws inconsistent with this section;" but left the repealing clause stand, " and existing laws so limiting or prescribing are annulled and avoided." These words, limiting and prescribing, were immediately preceding and connected with the repealing clause, and such laws only were intended to be repealed. And the subsequent change of the words " limiting and prescribing " to " such Acts," have the same meaning, and it was so intended.

But if any doubt exists in this branch of the case, it is resolved in favor of the existing validity of the Act of 1868 by the decision in Pennsylvania R. R. Co. v. Langdon, 11 Norris 21. The language of that case is express and must be taken as decisive.

[*Lewis v. .Hollahan.*]

  *George Ross* (*L. L. James* and *Louis H. James* with him),
for the defendant in error.—Whether the Act of 1868 applies
to non-accepting companies is immaterial,. for section 23 of art.
III. of the new Constitution, when read as a whole clearly avoids
it. That section contains two paragraphs; the first having
reference to the subject of injuries to persons or property, the
limitations of amount to be recovered therefor, and the survival
of the right of action; the second paragraph refers to the same
subject, to wit: Injuries to persons or property, limitations
of time in which suits may be brought, and the causes for suit;
each paragraph begins with the expression, "No Act," and the
second concludes with the general mandate, "and such Acts
now existing are avoided." What Acts? Obviously the two
Acts referred to in the beginning of each paragraph. In the
second paragraph of the section, but one Act is mentioned ; .so
also, in the first paragraph; the word Acts cannot refer to the
word Act in .the singular number, mentioned in. the second
paragraph, but must necessarily be the collocation of the two
expressions which form the commencement of each paragraph:
Pennsylvania R. R. *v.* Langdon, 11 Norris 34, fails to rule
the question here, because the Pennsylvania Railroad Company
had accepted the provisions of the Act of 1868, while the Read-
ing Railroad Company has not.

  Mr. Justice STERRETT delivered the opinion of the court
October 19th 1883.
  The negligence of defendant below, on which the action is
grounded, was so clearly and conclusively established that the
right of plaintiffs to recover was conceded ; and the only ques-
tion was as to the amount for which a verdict should be ren-
dered.
  It was contended that the damages to be recovered by the
widow and children of one whose death has been caused by un-
lawful violence or negligence is limited by the Act of 1868 to
$5,000, and in no event can the verdict exceed that sum. The
learned judge refused to so charge, and instructed the jury that
the proper measure of damages in this case, is the pecuniary loss
suffered by the plaintiffs, "without any solatium for distress of
mind, and that loss is what the deceased would have probably
earned by his intellectual or bodily labor in his business or pro-
fession during the residue of his lifetime, and which would have
gone for the benefit of his wife and children, taking into con-
sideration his age, ability and disposition to labor, and his habits
of living and expenditure;" and, that the Act of 1868, in so
far as .it limits the amount to be recovered in cases like. the
present, was avoided by the 21st section, art. 3 of the Con-
stitution, which ordains as follows, viz : "No Act of the gen-

eral assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property ; and, in case of death from such injuries, the right of action shall survive, and the general assembly shall prescribe for whose benefit such actions shall be prosecuted. No Act shall prescribe any limitations of time within which suits may be brought against corporations, for injuries to persons or property, or for other causes different from those fixed by general laws regulating actions against natural persons, and such Acts now existing are avoided."

The statutory right of action in cases of death occasioned by unlawful violence or negligence was given by the Act of April 15th 1851, Purd. 1093. The persons entitled to recover damages are designated by the Act of April 26th 1855, which also limits the time, within which suit may be brought, to one year from the death. The amount of damages to be recovered " against common carriers or corporations, owing, operating or using a railroad, as a public highway, whereon steam or other motive power is used," is limited by the second section of the Act of April 4th 1868 (P. L. 58), in cases of personal injury to $3,000, and in cases of death resulting therefrom to $5,000. The third section of this Act authorizes such carriers or corporations to indemnify themselves by insuring the lives and persons of their passengers, etc. The fourth section, after repealing all Acts or parts of Acts inconsistent therewith, declares that " any provisions in the Acts incorporating such common carriers or corporations, inconsistent therewith, shall be repealed upon the acceptance of this Act by such carriers or corporations ; and upon the acceptance of the provisions hereof the same shall become a part of its Act of incorporation."

It is claimed that the judgment of the court below may be sustained on two distinct grounds : 1st. That the Act of 1868, limiting the amount of damage, is applicable only to such carriers and corporations as have accepted its provisions, as provided for in the fourth section : and inasmuch as plaintiff in error has never accepted the provisions of the Act it cannot claim the benefit of the statutory limitation contained in the second section thereof. 2nd. That, whether this be so or not, the Act itself, in so far at least as it limits the amount of damages to be recovered, is avoided by the constitutional provision above quoted.

As to the first proposition, we cannot agree with the learned counsel for defendants in error. The second section of the Act is a general law applicable to non-accepting as well as accepting carriers or corporations of the class therein mentioned, and the only effect of refusal to accept the provisions of the Act is to deprive them of the means of indemnity provided in the third

[Lewis *v.* Hollahan.]

section, as well as the benefits resulting from the modification of their charters provided for in the fourth section.

As to the second proposition, we are of opinion that it is correct. The purpose of the twenty first section of the third Article of the Constitution was to nullify, as far as possible, then existing legislation limiting the amount to be recovered for injuries resulting in death, or for injuries to persons or property, as well as that limiting the time within which suits could be brought against corporations for injuries to persons or property or for other causes, so far at least as said limitation of time differed from that fixed by general laws regulating actions against natural persons; and, at the same time, prevent all such legislation in the future. The phraseology of the section as well as the discussion that took place during the course of its adoption clearly indicates that such was the intention of the framers of the Constitution. It commences by declaring, "No Act of the general assembly shall limit the amount," &c. The language thus employed cannot be fairly restricted to future legislation alone. It is quite as applicable to then existing as it is to prospective legislation. If its authors had intended that it should apply only to the latter they would have used some such expression as we find in the 1st, 6th, 7th, 8th, 11th and 20th sections of the same article, viz: "No law shall be passed except by bill," &c; "No law shall be revived," &c. "The general assembly shall not pass any local or special law," &c. "Nor shall the general assembly indirectly enact," &c. "Nor shall any law be passed granting powers or privileges," &c. "No local or special bill shall be passed giving any extra compensation," &c. "The general assembly shall not delegate to any special commission," &c. These expressions manifestly have reference solely to future legislation, while the language of the 21st section is applicable to then existing as well as prospective legislation. It is equivalent to saying : No Act of the general assembly now in force or hereafter to be passed shall limit, &c. If this be so, it follows that the second section of the Act of 1868 is inconsistent with the Constitution, and therefore not within the protection of the second section of the schedule. Moreover, in endeavoring to determine the full scope and meaning of the section, it should be considered, as a whole in the light of the evil intended to be remedied by its adoption. It is very evident that the evil at which it was aimed was the obnoxious statutory limitation as to the amount of damages to be recovered, and the time within which suit for the recovery thereof had to be brought, in the class of cases therein mentioned ; and it is equally clear that the purpose was to apply the constitutional remedy forthwith, and thus avoid the risk of possible tardy legislation on the subject. The closing words of the sec-

tion, " and such Acts now existing are avoided," were doubtless intended to refer to the Act limiting the amount as well as that limiting the time within which suit might be brought for the recovery of damages.

The case of Pennsylvania Railroad Co. v. Langdon, 11 Nor. 34, cited and relied on by plaintiff in error, was well decided on other controlling questions, but we do not see our way clear to follow it as authority on the precise constitutional question involved in this case. One of the questions in that case was as to the effect of acceptance by the company of the Act of 1868. In this case that question does not arise.

The second assignment of error is not sustained. Considered as a whole, there is no error in the charge.

Judgment affirmed.