Samuel O. Picariello, Plaintiff *v.* Commonwealth of Pennsylvania et al., Defendants.

Argued September 8, 1980, before Judges WILKINSON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Jeffrey M. Voluck,* for plaintiff.

*Herbert L. Olivieri,* Chief, Torts Litigation Unit, with him *Randall G. Gale,* Deputy Attorney General, *Harvey Bartle, III,* Acting Attorney General, and *Joseph F. Roda,* of *Kohn, Savett, Marion & Graf,* for defendants.

OPINION BY JUDGE CRAIG, October 15, 1980:

Plaintiff Samuel Picariello filed this action in trespass in the Philadelphia Court of Common Pleas against the Commonwealth of Pennsylvania, Depart-

ment of Revenue, Milton Lopus, former Secretary of Revenue, the Department of Justice of Pennsylvania (Commonwealth defendants), *The Guide* newspaper and Fry Communications, alleging defamation, invasion of privacy and intentional inflicting of emotional distress.

Plaintiff's complaint avers that, in January of 1978, a confidential letter containing false and libelous statements was sent by the Justice Department to Secretary Lopus. The information was in turn given by the Secretary as a press release to *The Guide,* which published it in its January 10, 1979 edition.

The Commonwealth defendants filed a preliminary objection challenging the jurisdiction of the common pleas court on the ground that original jurisdiction over an action against the Commonwealth or an officer acting in his official capacity is vested in the Commonwealth Court by Section 761(a)(1)(iii) of the Judicial Code, 42 Pa. C. S. §761(a)(1)(iii); the remaining preliminary objections were in the nature of a claim of absolute immunity and a demurrer. The common pleas court sustained the jurisdictional objection and transferred the action as against the Commonwealth defendants to this court pursuant to 42 Pa. C. S. §5103 (a). The remaining preliminary objections are before us at this time.

The Commonwealth defendants first argue that the Commonwealth and the Departments of Revenue and Justice have sovereign immunity from suit for defamation, invasion of privacy, and inflicting emotional distress, under Section 5110 of the Judicial Code, 42 Pa. C. S. §5110(a) (Act 152).[1]

---

[1] Although the issue of immunity from suit should be raised by the defendants in a responsive pleading under the heading of "New Matter", Pa. R.C.P. No. 1030, we will treat these questions because the plaintiff has not objected to them being raised by preliminary objection.

The claim is clearly governed by the provisions of Act 152. Although the Pennsylvania Supreme Court has limited the application of Act 152 to actions arising on or after September 28, 1978, the effective date of the Act, *Gibson v. Commonwealth*, Pa. , 415 A.2d 80 (1980), the complaint in this case indicates that the alleged injuries occurred "on or about January 10, 1979," the date the article containing the statement appeared in *The Guide.*

Plaintiff's complaint fails to allege a cause of action within any of the eight exceptions to the bar of sovereign immunity provided by Act 152;[2] accordingly, the actions against the Commonwealth and the Departments of Revenue and Justice are barred.

In an answer to Commonwealth defendants' preliminary objection asserting sovereign immunity, plaintiff challenges the validity of Act 152 under the Pennsylvania and Federal Constitutions.[3]

A strong presumption exists in favor of the constitutionality of legislation; a statute will not be struck down unless it "clearly, palpably, and plainly violates the Constitution." *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975). This presumption is equally applicable to federal constitutional consideration of state legislation. *Singer, supra.*

Plaintiff has not directed our attention to any particular provision of the Pennsylvania Constitution which invalidates Act 152; accordingly, we cannot hold as a matter of law that plaintiff has shown that Act

---

[2] Indeed, the report of the Pennsylvania Joint State Government Commission of the Pennsylvania General Assembly on "Sovereign Immunity" specifically rejected waiving sovereign immunity for claims arising out of intentional torts such as libel, slander and invasion of privacy.

[3] A challenge to the constitutionality of Act 152 was not addressed by the court in *Gibson v. Commonwealth,* Pa. , 415 A.2d 80, 85 n. 6 (1980).

152 clearly, palpably, and plainly violates the Constitution.

Plaintiff's federal challenge asserts that Act 152 denies him due process and equal protection of the law under the Fourteenth Amendment.

Plaintiff's allegation that he was denied due process of law is necessarily limited to a facial examination of the Act, because his answer contains no facts indicating he suffered any special injury. *Snider v. Shapp*, 45 Pa. Commonwealth Ct. 337, 405 A.2d 602 (1979).

In *Martinez v. California*, U.S. , 100 S.Ct. 553 (1980), the United States Supreme Court rejected a due process attack on California Tort Claims Act, West's Ann. Cal. Gov. Code, §845.8(a), which legislatively immunized parole officers from claims for injuries resulting from their parole decision:

> Nor can the statute be characterized as an invalid deprivation of property. Arguably, the cause of action for wrongful death that the State has created is a species of 'property' protected by the Due Process Clause. On that hypothesis, the immunity statute could be viewed as depriving the plaintiffs of that property interest insofar as they seek to assert a claim against parole officials. But even if one characterizes the immunity defense as a statutory deprivation, it would remain true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational. (Footnotes omitted.)

100 S.Ct. at 557.

We here hold that Act 152 is rationally related to legitimate governmental objectives. A specified, limited waiver of sovereign immunity allows an actuarial

evaluation of potential costs and promotes efforts to insure against potential liability. A balance must be struck between unlimited potential liability and the need for fiscal security. Full monetary responsibility for the tortious conduct of its agencies and employees involves the risk of an intolerable tax burden. Act 152 allows compensation of victims of certain enumerated government torts while at the same time protecting the public treasury from insolvency. The legislature legitimately may take steps to preserve sufficient public funds to guarantee that the government will be able to continue to provide those services which it believes benefits the citizenry. We therefore find no merit to the claim that Act 152 is unconstitutional on its face as a deprivation of due process of law.

Lastly, plaintiff argues that Act 152 violates the equal protection clause of the Fourteenth Amendment because of its unequal treatment of a plaintiff based on the status of the party he is suing.

This argument has been considered and rejected by other state courts. *See, e.g., Stanhope v. Brown County,* 90 Wis.2d 823, 280 N.W.2d 711 (1979); *Sambs v. City of Brookfield,* Slip Op., Wisconsin Supreme Court, June 27, 1980, per ABRAHAMSON, J.; *Seifert v. Standard Paving Co.,* 64 Ill.2d 109, 355 N.E.2d 537 (1976). In addition, an equal protection challenge to Pennsylvania's No-Fault Motor Vehicle Insurance Act[4] was found meritless in *Singer, supra.*

Where neither a suspect class nor a fundamental right is burdened, a legislative classification which results in inequality must be sustained so long as a rational relationship to a legitimate governmental interest exists to justify it. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764 (1973). The factors outlined above provide a rational basis for the distinction

---

[4] Act of July 19, 1974, P.L.      , No. 176, 40 P.S. §1009.101 et seq.

drawn by Act 152 between governmental and non-governmental tortfeasors, and it is therefore not violative of the equal protection clause of the Fourteenth Amendment.

Accordingly, plaintiff's constitutional challenges to Act 152 must be dismissed and the preliminary objections sustained as to the Commonwealth and its departments.

The remaining thrust of the Commonwealth defendants' preliminary objection is that suit against the former Secretary of Revenue must be dismissed on the ground that he is absolutely immune as a Commonwealth officer.

Plaintiff claims in his "Answer"[5] to the preliminary objection that the Secretary was not acting within the scope of his duties as Secretary of Revenue, and so should not be accorded official immunity. However, plaintiff's complaint clearly contradicts that claim, by alleging that the Secretary acted as a Commonwealth agent.[6]

The guidelines established in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1979) are controlling in a determination of the extent of qualified official immunity to be granted to Lopus. *Estate of Armstrong v. Pennsylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979).

---

[5] An "answer" to a preliminary objection cannot be used to amend the complaint. *See* Pa. R.C.P. No. 1033.

[6] Paragraph 11 of the complaint states:

On or prior to January 10, 1979, the Defendant, Commonwealth of Pennsylvania and the Department of Revenue of Pennsylvania *through their agent and/or employee, defendant, Milt Lopus,* did provide and publish to the defendant newspaper, *The Guide,* and defendant publishing company of *The Guide, Fry Communications, Inc.,* . . . . (Emphasis supplied.)

*DuBree* holds that a public official shall not be shielded by immunity where three elements conjoin: (1) under analogous rules of law, involving a predictable standard of care, a right of action would lie; (2) available remedies have not been left unused by the plaintiff; and (3) no public policy would be promoted by a shield of official immunity.

Here the first and second elements are clearly satisfied: A right of action for defamation and a useable standard of care exist under analogous rules of tort law, and plaintiff has no other remedy because a claim against the Commonwealth and the Department of Revenue is barred by Act 152.

However, neither the complaint nor any pleading by defendants has yet addressed the question of whether public policy is or is not served by the release of the information to the press in these circumstances. We note that the United States Supreme Court has held the directors of a federal agency immune from the issuance of a defamatory press release where it was released as a public service and was within the interest and concern of the public. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335 (1959).

Accordingly, we must overrule the preliminary objections as to former Secretary Milton Lopus. Defendant shall file an answer, possibly with new matter addressing the issue of qualified official immunity, if desired.

## ORDER

AND Now, this 15th day of October, 1980, preliminary objections numbered 1, 3 and 4 are sustained as to causes of action against the Commonwealth, Department of Revenue, and Department of Justice; preliminary objections 1, 3 and 4 are overruled as to causes of action against Milton S. Lopus.