Doris Lyles, Appellant *v.* City of Philadelphia et al., Appellees.

510

Argued December 11, 1984, before President Judge CRUMLISH, JR., and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Stephen M. Feldman,* for appellant.

*Michael B. Tolcott,* Assistant City Solicitor, with him, *Barbara W. Mather,* City Solicitor, *Barbara R. Axelrod,* Deputy City Solicitor, *Ralph J. Luongo,* Assistant City Solicitor, for appellee, City of Philadelphia and Amici Curiae: School District of Philadelphia and Cities of Pittsburgh, Reading, Allentown and Erie.

*Gary B. Gilman,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for appellee, Department of Transportation.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 8, 1985:

Before us is the appeal of Doris Lyles. A Philadelphia County Common Pleas Court order granted the Commonwealth's motion to limit a personal injury verdict to $250,000 and denied her motion for delay damages. We affirm the order with respect to the Commonwealth's motion and we reverse as to the latter motion and remand this case to the trial court for disposition consistent with this opinion.

Lyles suffered permanent quadriplegic injuries in a March 11, 1979 automobile accident on the Schuylkill Expressway which she alleged was caused by the Commonwealth's negligent highway design.[1] A jury found against the Commonwealth and awarded her $750,000.[2] The Commonwealth filed a motion seeking to mold this award to the $250,000 liability limitation imposed by Section 2 of the Sovereign Immunity Act (Act 152),[3] whereupon Lyles moved for delay damages of $96,875 as provided in Pa. R.C.P. No. 238. The trial court granted the Commonwealth's motion and denied Lyles' motion for delay damages.

---

[1] The Commonwealth joined as additional defendants the City of Philadelphia and the driver of the vehicle in which Lyles was a passenger, hence the appearance of the City's name in the caption to this opinion.

Lyles also brought a separate action against the City and several Commonwealth employees. She later withdrew this complaint as to the employees and settled with the City by executing a $500,000 joint tortfeasor release.

[2] The jury found no negligence on the part of the City or the driver.

[3] Section 5111 of the Judicial Code, *formerly* 42 Pa. C. S. §5111, repealed by the Act of October 5, 1980, P.L. 693. A similar provision is now found in Section 8528 of the Judicial Code, 42 Pa. C. S. §8528 (Act 142). Lyles' suit is controlled by Act 152 because the accident took place before that legislation's repeal. Section 5111 read, in pertinent portion:

### Act 152's Limitation on Damages Recoverable Against the Commonwealth

Lyles contends that Act 152's limitation on the Commonwealth's liability violates Article 3, Section 18 of the Pennsylvania Constitution and the proscriptions against unjustifiably discriminatory legislation recited in both Article 3, Section 32 of the Pennsylvania Constitution and in the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

It is settled beyond question that one bears a heavy burden when he seeks to establish that a statute is constitutionally defective. Legislation will survive such an attack absent a showing that it *"clearly, palpably, and plainly* violates the Constitution,'' *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963) (emphasis in original), and any uncertainty must be resolved in favor of its validity. *Milk Control Commission v. Battista,* 413 Pa. 652, 198 A.2d 840 (1964), *appeal dismissed* 379 U.S. 3 (1964).

Article 3, Section 18 provides, in relevant part: "The General Assembly may enact laws requiring the

No verdict or verdicts against the Commonwealth on actions brought pursuant to Section 5110 (relating to specific waivers of sovereign immunity) arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall exceed $250,000 in favor of any plaintiff. . . .

The Commonwealth also moved to reduce the verdict by $15,000 pursuant to the work-loss benefits provision of the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, *formerly* 40 P.S. §§1009.101—1009.701, repealed by the Act of February 12, 1984, P.L. 942. The parties agree that this reduction is proper, but only prior to any molding of the verdict to the $250,000 figure. As we hold that the verdict was properly reduced to $250,-000.00, the work-loss benefits provision does not affect Lyles' award.

payment by employers, or employers and employes jointly, of reasonable [workmen's compensation benefits]; but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property . . . ." Lyles urges that this language prohibits the legislature from limiting the amount of recoveries against the Commonwealth. In response, the Commonwealth asserts that the drafters of this section, and of later amendments thereto,[4] never intended it to apply to suits against the Sovereign.

A court is to interpret constitutional language in its popular, ordinary, and natural meaning, taking into consideration the circumstances surrounding its formation and the likely construction placed upon it by the people who voted for it. *Behrend v. Bell Telephone Co.*, 257 Pa. Superior Ct. 35, 390 A.2d 233 (1978). In guiding us, our Supreme Court has specifically instructed that " 'the full scope and meaning of [Article 3, Section 18] should be considered . . . in light of the evil intended to be remedied by its adoption.' " *Singer v. Sheppard*, 464 Pa. 387, 396, 346 A. 2d 897, 901 (1975) (quoting *Lewis v. Hollahan*, 103 Pa. 425, 430 (1883)).

Viewing Article 3, Section 18 through the eyes and minds of the Constitutional delegates, we believe that the evils which they intended to remedy were statutes setting unreasonably low limits on recoveries against certain classes of defendants, such as a law enacted in 1868 limiting the liability of railroads and other common carriers to $3,000 for personal injury and

---

[4] This provision was originally adopted in 1874 as Article 3, Section 21. A 1915 amendment added language exempting workmen's compensation benefits from its coverage. The 1967 Constitutional Convention renumbered this section as Article 3, Section 18.

$5,000 for fatality.[5] We so conclude based on the debates at the 1872-73 Constitutional Convention concerning this provision, which exclusively centered around the pros and cons of mandating unlimited recoveries against *private*—particularly corporate—defendants.[6] In light of this conclusion, and in light of judicial determinations considering Article 3, Section 18's application to subsequent legal developments,[7] we conclude that the draftsmen's overall purpose was to prevent the General Assembly from unfairly favoring a class of private defendants over a class of private plaintiffs by statutorily limiting the right to an adequate compensatory recovery. Therefore, it would be unreasonable to impute to the original draftsmen of Article 3, Section 18, and certainly to those who merely inserted the workmen's compensation provision in 1915 and renumbered this section in 1967, an intent that it apply to suits where a government entity is the defendant. Such a result could not further the goal of the framers because there is no unjust furtherance of selfish private interests from a restriction on recoveries against the *public* treasury. We therefore hold that Article 3, Section 18 does not apply to suits against the Commonwealth.

Turning to the challenges under Article 3, Section 32 of our state constitution and the federal Equal Pro-

---

[5] Act of April 4, 1868, P.L. 58.

[6] *See* 2 *Debates of the Convention to Amend the Constitution of Pennsylvania* 727-749 (1873); 5 *Debates of the Convention to Amend the Constitution of Pennsylvania* 292-293 (1873); T. White, *Commentaries on the Constitution of Pennsylvania* 270 (1907).

[7] *See, e.g., Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978) (rejecting challenge to statute extinguishing tort liability of builders and architects twelve years after a structure's completion); *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955) (sustaining law immunizing innkeepers from liability for lost or damaged property if they offered safe deposit facilities).

tection Clause,[8] Lyles contends that Act 152's damage restriction creates several classifications which illegally discriminate against victims of the Commonwealth's torts.[9]

We must first decide the level of scrutiny. Courts have devised three general levels of scrutiny for Equal Protection Clause challenges. The highest level, known as strict scrutiny, applies to legislative classifications infringing upon fundamental rights, such as free speech, and to those which are inherently suspect because they inordinately burden a group of citizens traditionally victimized by discrimination, for instance racial minorities. *Department of Transportation, Bureau of Traffic Safety v. Slater,* 75 Pa. Commonwealth Ct. 310, 462 A.2d 870 (1983). Under this scrutiny, a classification will not pass constitutional muster unless it is necessary to advance a compelling state interest. *Benner v. Oswald,* 592 F.2d 174 (3d Cir.

---

[8] Article 3, Section 32, states in pertinent part that "[t]he General Assembly shall pass no local or special law in any case which has been or can be provided for by general law. . . ."

The Equal Protection Clause provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[9] The classifications suggested by Lyles are:

(1) victims of the Commonwealth's torts, compared to victims of private tortfeasors, who can recover unlimited damages,

(2) victims of the Commonwealth's torts, compared to victims of political subdivisions' torts, who can recover up to $500,000,

(3) victims of the Commonwealth's torts at one point in time, compared to victims of the Commonwealth's torts at an earlier time, whose $250,000 recovery is worth more due to inflation,

(4) victims of the Commonwealth's torts whose damages exceed $250,000, compared to victims of the Commonwealth's torts whose damages do not exceed this amount, and

(5) victims of the Commonwealth's torts, compared to those who have contract claims against the Commonwealth, where there is no limit on recovery amounts.

1979), *cert. denied,* 444 U.S. 832 (1979). The next level, termed middle-level or intermediate scrutiny, applies to classifications affecting less fundamental rights, such as commercial speech, and to classifications which are not quite so suspect, such as gender. *Long v. 130 Market Street Gift & Novelty of Johnstown,* 294 Pa. Superior Ct. 383, 440 A.2d 517 (1982). When this test applies, a classification must serve an important government interest and be substantially related to the achievement of that interest. *Craig v. Boren,* 429 U.S. 190 (1976). The third level, employing the least scrutiny, is the rational relationship test. It applies to all other legislative classifications, for example those implicating economic rights. This minimal scrutiny upholds classifications unless they are patently arbitrary and lack any rational relationship to a legitimate government interest. *Robson v. Penn Hills School District,* 63 Pa. Commonwealth Ct. 250, 437 A.2d 1273 (1981).

Since the restriction imposed by Act 152 neither creates a suspect classification nor burdens a fundamental right, but rather impacts on the economic right to full compensation, the appropriate level of scrutiny under the Equal Protection Clause is the rational relationship test. *See Picariello v. Commonwealth,* 54 Pa. Commonwealth Ct. 252, 421 A.2d 477 (1980). This test is likewise the proper level of scrutiny under Article 3, Section 32 because this provision bears a meaning and purpose similar to the Equal Protection Clause. *Baltimore & Ohio Railroad Co. v. Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975), *appeal dismissed* 423 U.S. 806 (1975).

Act 152's limit on the Commonwealth's damage payments rationally relates to the legitimate government interest in preserving sufficient funds for essential public services without imposing an undue

burden upon taxpayers. As we noted in an earlier decision upholding another provision of Act 152 against an Equal Protection Clause challenge:

> A balance must be struck between unlimited potential liability and the need for fiscal security. Full monetary responsibility for the tortious conduct of [the Commonwealth's] agencies and employees involves the risk of an intolerable tax burden. . . . The legislature legitimately may take steps to preserve sufficient public funds to guarantee that the government will be able to continue to provide those services which it believes benefits the citizenry.

*Picariello,* 54 Pa. Commonwealth Ct. at 257, 421 A.2d at 480. Lyles' Article 3, Section 32 and Equal Protection challenges thus fail.

### *Delay Damages*

Lyles argues that the trial court erred in ruling that the Commonwealth is exempt from the levy of delay damages mandated by Pa. R.C.P. No. 238.[10] We agree.

In *Commonwealth v. Twentier,* 76 Pa. Commonwealth Ct. 537, 464 A.2d 642 (1983), we held that the Commonwealth is subject to delay damages. *See also*

---

[10] Rule 238 states, in relevant portion:

(a) . . . [I]n an action seeking monetary relief for bodily injury, . . . the court . . . shall

(1) add to the amount of compensatory damages . . . in the verdict of a jury . . . damages for delay at ten (10) percent per annum, not compounded, which shall become part of the . . . verdict . . . ;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the . . . verdict . . . .

. . . .

*Ehehalt v. Nyari O'Dette, Inc.,* 85 Pa. Commonwealth Ct. 94, 481 A.2d 365 (1984). *Twentier* relied on our Supreme Court's ruling that delay damages are procedural in nature, and thus within its *exclusive* constitutionally-mandated authority as administrator of the judicial system. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed sub. nom. Bucheit v. Laudenberger,* 456 U.S. 940 (1982). Since our Supreme Court enjoys the sole discretion to allow the assessment of *procedural* damages, the General Assembly cannot interfere with it by the use of Act 152's restrictions on the award of *substantive* damages against the Commonwealth. *See In Re: 42 Pa. C. S. §1703,* 482 Pa. 522, 394 A.2d 444 (1978); *see also Garrett v. Bamford,* 582 F.2d 810 (3d Cir. 1978).

Lyles is entitled to an award of delay damages in addition to her $250,000 recovery, but these damages are governed by subsection (e) of Rule 238, which provides that delay damages do not accrue beyond the date of a written offer of prompt cash payment where the offer is kept open and the verdict does not exceed 125 percent of the amount offered. Her delay damage calculation is based on the delay period continuing up to and including the June 4, 1982 verdict, but the Commonwealth made a $250,000 written offer of settlement on April 15, 1982. Because the molded verdict did not exceed 125 percent of the Commonwealth's offer, the award of delay damages is limited to a

---

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specific sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by . . . verdict . . . , exclusive of damages for delay, more than 125 percent of the offer, the court . . . shall not award damages for delay for the period after the date the offer was made.

period ending April 15, 1982, if it is determined on remand that there has been compliance with all the other requirements of Rule 238(e).

### Conclusion

We affirm the trial court's grant of the Commonwealth's motion to mold the verdict to Act 152's $250,000 damage limitation. We reverse the trial court's denial of Lyles' motion for delay damages and remand for a computation and award consistent with this opinion.

### ORDER

The order of the Philadelphia County Common Pleas Court, No. 3017 February Term 1981, dated July 12, 1983, is affirmed as to the molding of the verdict to the $250,000 damage limitation imposed by Act 152; the order is reversed as to the denial of delay damages. The case is remanded for a computation and award of delay damages consistent with the foregoing opinion.

Judge BARRY concurs in the result only.

Judge WILLIAMS, JR., did not participate in the decision in this case.