512 A.2d 756

Germantown Savings Bank, Appellant *v.* City of Philadelphia, Appellee.

I. C. S. Corporation, Appellant *v.* City of Philadelphia, Appellee.

Argued April 9, 1986, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Stephen A. Cozen,* with him, *Vincent R. McGuinnes, Jr., Miles A. Jellinek* and *Michael P. Meehan, Cozen, Begier & O'Connor,* for appellants.

*Denise D. Colliers,* Deputy City Solicitor, with her, *Barbara W. Mather,* City Solicitor, for appellee.

Opinion by Judge MacPhail, July 7, 1986:

The sole issue presented for our disposition in these consolidated appeals is whether Section 8553(d) of the Political Subdivision Tort Claims Act (Act), 42 Pa. C. S. §8553(d) is unconstitutional as violative of equal protection. For the reasons which follow, we hold that Section 8553(d) of the Act is constitutional.

The facts are not in dispute. I.C.S. Corporation and Germantown Savings Bank (Appellants) brought separate subrogation actions against the City of Philadelphia (City) alleging that the City's negligence in inspecting and maintaining certain fire hydrants caused the hydrants to rupture and destroy Appellants' property.[1]

---

[1] I.C.S. Corporation (ICS), through its insurance company, brought a subrogation action against the City in the Court of Common Pleas of Philadelphia County alleging, *inter alia,* that the City negligently inspected and maintained a fire hydrant which ruptured on September 18, 1980 and flooded ICS's premises. ICS sought judgment against the City for an amount not in excess of twenty thousand dollars ($20,000.00), together with interest, delay damages and costs of suit. ICS received $10,212.29 from its insurance company for the damage done to its property. Similarly, Germantown Savings Bank (GSB) brought suit against the City claiming $44,662.30 in damages as a result of a water main break on June 16, 1982. GSB received $44,162.30 from its insurance company to compensate for the damage done to its property.

The City filed separate preliminary objections to both complaints averring that the complaints did not conform to the Act. Appellants, in turn, alleged that Section 8553(d) of the Act did not apply to the matter at hand or, in the alternative, that that section was unconstitutional. Pursuant to Pa. R.C.P. No. 235, Appellants notified the Attorney General of their challenge to the constitutionality of Section 8553(d).

The trial court denied the City's preliminary objections. The City thereafter filed an Answer and New Matter asserting that the Act precluded the subrogation actions. Appellants each filed a Motion to Dismiss the New Matter and the City filed cross-motions for partial summary judgment. The trial court denied both motions to

The trial court determined that the City was not liable for any damages to the extent Appellants were compensated for their injuries by insurance. The court further held that the insurance companies had no right to subrogation, quoting *Aetna Casualty and Surety Co. v. Borough of Hamburg*, 22 Pa. D. & C. 3d 454, 458 (1982): "the political subdivision's liability for damages is statutorily limited and therefore it is not obligated to pay plaintiff's insured. Certainly, plaintiff's right under subrogation rises no higher than the right of its insured." Trial court opinion at 2-3.[2]

Section 8553 of the Act provides, in pertinent part:

§8553. Limitations on damages

(a) General rule.—Actions for which damages are limited by reference to this subchapter shall be limited as set forth in this section.

. . . .

(c) Types of losses recognized.—Damages shall be recoverable only for:

. . . .

(6) Property losses.

---

dismiss and granted the cross-motions. Upon application, the trial court certified as a controlling question the constitutionality of Section 8553(d) and appeals were taken by Appellants to this Court. On February 21, 1985, we accepted both appeals and specifically limited the issue to whether Section 8553(d) of the Act is unconstitutional as violative of equal protection. *See Michel v. City of Bethlehem*, 84 Pa. Commonwealth Ct. 43, 478 A.2d 164 (1984). Although Appellants invite us to reconsider our decision in *Michel*, we decline to do so. It is our opinion that our decision in *Michel* correctly disposed of the issues presented therein. Note that there was not a constitutional challenge to the Act in *Michel*.

[2] In disposing of the motions and cross-motions, the trial court attached the opinion of *Aetna Insurance Co. v. City of Philadelphia*, (No. 2417 November Term 1982, filed June 22, 1984) as the opinion of the court in both cases.

(d) Insurance benefits.—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

It is Appellants' position that Section 8553(d) of the Act violates the equal protection clauses of the Pennsylvania and United States Constitutions by unlawfully discriminating between classes of litigants and tortfeasors. Appellants argue that it is unlawful, and thereby unconstitutional, for plaintiffs-against-the government whose losses are privately insured to be treated in one way, while those plaintiffs-against-the government who do not have insurance are treated in another.[3]

Preliminarily, we note that "one bears a heavy burden when he seeks to establish that a statute is constitutionally defective. Legislation will survive such an attack absent a showing that it *clearly, palpably,* and *plainly* violates the Constitution,'. . . and any uncertainty must

---

[3] Appellants assert that Section 8553(d) of the Act violates Article 3, Section 32 of the Pennsylvania Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Article 3, Section 32 of our state constitution states in pertinent part that "[t]he General Assembly shall pass no local or special law in any case which has been or can be provided for by general law. . . ." The Equal Protection Clause provides "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Those provisions, however, must be read in conjunction with the provisions of Article 1, Section 11 of the Constitution of Pennsylvania, which state: "All courts shall be open; and every man for an injury done him . . . shall have remedy by due course of law. . . . *Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.*" (Emphasis added.)

be resolved in favor of its validity." *Lyles v. City of Philadelphia*, 88 Pa. Commonwealth Ct. 509, 512, 490 A.2d 936, 939 (1985) (quoting *Daly v. Hemphill*, 411 Pa. 263, 271, 191 A.2d 835, 850 (1963) (emphasis in original)). Our Supreme Court has held that it is not *per se* violative of the equal protection clause for the Commonwealth to treat different classes in different ways. *Singer v. Sheppard*, 464 Pa. 387, 402, 346 A.2d 897, 904-905 (1975) (footnotes omitted):

> Our inquiry, however, cannot conclude with the discovery of unequal treatment. . . . Except where an invidious discrimination against a suspected class is at issue or a fundamental right burdened, 'a legislative classification must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest.' Frontiero v. Richardson, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed 2d 583 (1973).

We must determine the appropriate standard of judicial review to be applied in reviewing this equal protection challenge. There are three different types of legislative classifications calling for three different analyses:

> The highest level, known as strict scrutiny, applies to legislative classifications infringing upon fundamental rights, such as free speech, and to those which are inherently suspect because they inordinately burden a group of citizens traditionally victimized by discrimination, for instance racial minorities. . . . Under this scrutiny, a classification will not pass constitutional muster unless it is necessary to advance a compelling state interest. . . . The next level, termed middle-level or intermediate scrutiny, applies to classifications affecting less fundamental rights,

such as commercial speech, and to classifications which are not quite so suspect, such as gender. . . . When this test applies, a classification must serve an important government interest and be substantially related to the achievement of that interest. . . . The third level, employing the least scrutiny, is the rational relationship test. It applies to all other legislative classifications, for example those implicating economic rights. This minimal scrutiny upholds classifications unless they are patently arbitrary and lack any rational relationship to a legitimate government interest.

*Lyles,* 88 Pa. Commonwealth Ct. at 515-16, 490 A.2d at 940-41 (citations omitted).

Appellants argue that they have been denied the fundamental right of access to the courts and that strict scrutiny applies, or, at the very least, intermediate scrutiny. We disagree. Strict scrutiny applies only if the right infringed upon derives from the Constitution, *Plyler v. Doe,* 457 U.S. 202 (1982). Our state Supreme Court has held that there is no fundamental right to sue the Commonwealth or its political subdivisions under either the United States or Pennsylvania Constitutions. *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984); *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981). Since the restriction imposed by Section 8553(d) of the Act does not create a suspect classification nor infringe upon a fundamental right, strict scrutiny is inappropriate.

Whether intermediate scrutiny is appropriate depends upon whether an important interest has been affected by the classification, and whether sensitive, though not suspect, classifications have been made. *James.* In *James,* the plaintiff-appellee claimed that the notice provisions of the Metropolitan Transportation Au-

thorities Act[4] violated his equal protection rights because if he did not comply with the notice provisions, he would be unable to bring his suit against the Commonwealth. The court made the following observations:

> Although it may be argued that James' liberty is not affected by this classification, since he was at liberty to sue the Commonwealth had he complied with the notice requirement, it is, nevertheless true that James' important interest in access to the courts to sue the Commonwealth in cases where the Commonwealth has consented to suit, has been restricted. Superior Court, therefore, was correct in determining that an intermediate or heightened scrutiny standard of review is appropriate.

*James,* 505 Pa. at 146-47, 477 A.2d at 1306. Appellants insist that their "important interest" in access to the courts has been restricted by Section 8553(d) of the Act. Appellants herein, however, are not denied access to the courts by Section 8553(d) of the Act—they are deprived only of the economic right to "full" compensation, *i.e.,* subrogation.[5] The appropriate level of scrutiny under the equal protection clause to be applied to the matter herein, therefore, is the rational relationship test. *See Lyles.*

---

[4] The Metropolitan Transportation Authorities Act of 1963, P.L. 984, 66 P.S. §2036 was repealed by the Act of April 28, 1978, P.L. 202.

[5] Appellants likewise contend that Section 8553(d) impinges upon their constitutional right to a jury trial. It seems obvious to us that Appellants' right to a jury trial is unimpaired by Section 8553(d). Nowhere is there any language in that section which would restrict that right. The jury may award such damages as the evidence warrants; that award, however, must be reduced by the amount of insurance proceeds paid to the Appellants.

We now turn to the relationship between the purpose behind the Act and the classes created and objected to. The Act provides political subdivisions, in this case the City, with immunity from suits except for those injuries resulting from eight separately described causes, and limits the extent of the political subdivision's liability when one of the eight exceptions applies. As noted in a prior decision of this Court, the purpose of the Act was "to stabilize the political subdivision's ability to obtain insurance coverage by defining the risks to be covered." *Robson v. Penn Hills School District,* 63 Pa. Commonwealth Ct. 250, 255, 437 A.2d 1273, 1276 (1981). In assessing a similar equal protection challenge to the Sovereign Immunity Act,[6] we noted that:

> A balance must be struck between unlimited potential liability and the need for fiscal security. Full monetary responsibility for the tortious conduct of [the Commonwealth's] agencies and employees involves the risk of an intolerable tax burden. . . . The legislature legitimately may take steps to preserve sufficient public funds to guarantee that the government will be able to continue to provide those services which it believes benefits the citizenry.

*Lyles,* 88 Pa. Commonwealth Ct. at 517, 490 A.2d at 941, quoting *Picariello v. Commonwealth,* 54 Pa. Commonwealth Ct. 252, 257, 421 A.2d 477, 480 (1980). The limit on awards recoverable by claimants[7] against political subdivisions assures "that the Commonwealth will not be required to process and defend various litigation

---

[6] Section 5111 of the Judicial Code, *formerly* 42 Pa. C. S. §5111, repealed by the Act of October 5, 1980, P.L. 693. A similar provision is now found in Section 8528 of the Judicial Code, 42 Pa. C. S. §8628.

[7] The *Carroll* Court declined to address this issue. *See* 496 Pa. at 370 n.4, 437 A.2d at 397 n.4.

brought against it in areas where risk management is totally uncertain. . . ." *Carroll,* 496 Pa. at 369, 437 A.2d at 397, quoting the Report of the Joint State Government Commission on Sovereign Immunity, May 1978 at 10.[8]

In sum, Section 8553(d) of the Act requires a plaintiff who is compensated for injuries from insurance companies to deduct this amount of compensation from the amount of compensation he would otherwise be entitled to recover in his claim asserted against the political subdivision. We hold that classifying plaintiffs who receive insurance benefits differently from those plaintiffs who will not receive insurance benefits is rationally related to the legitimate government interest in clearly defining the extent to which a political subdivision is at financial risk.[9] We conclude that Section 8553(d) of the Act is not violative of equal protection.

---

[8] Appellants' reliance upon *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), for the proposition that our Supreme Court rejected economic justification when faced with a constitutional challenge to legislation, must fail. The *Ayala* court abrogated a judicially created doctrine: what is at issue in the case *sub judice* is an act of the Legislature. As the *Carroll* Court observed, "[it] is not our function to displace a rationally based legislative judgment." 496 Pa. at 369, 437 A.2d at 397.

[9] The cases from other jurisdictions cited in Appellants' brief which have held that a limitation on recovery against municipalities where immunity has been waived violates equal protection under the law, are not, of course, binding upon us.

Appellants also argue that giving constitutional validity to Section 8553(d) will turn Pennsylvania's well recognized "collateral source" rule "on its head". The collateral source rule is a judicially created principle stating that damages recoverable by a tort victim are not reduced by any insurance benefits payable under a policy obtained by that victim. *Moidel v. Peoples Natural Gas Co.,* 397 Pa. 212, 154 A.2d 399 (1959). There is nothing to prevent the Legislature from enacting legislation which abrogates a judicial principle as long as the legislation is constitutionally valid. We here hold that Section 8553(d) is a constitutionally valid exercise of legislative authority.

## ORDER

The order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed and the case remanded to the Court of Common Pleas of Philadelphia County for further proceedings.

Jurisdiction relinquished.