**Smith H. TAYLOR, Plaintiff,**

v.

**The MONONGAHELA RAILWAY CO.,**
**Defendant.**

**Civ. A. No. 12270.**

United States District Court
W. D. Pennsylvania.

Oct. 22, 1957.

Oliver, Brandon & Shearer, Pittsburgh, Pa., for plaintiff.

Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

McILVAINE, District Judge.

In this case the plaintiff brought suit against the defendant railroad to recover for damages he suffered as a result of injuries sustained by him while employed on said railroad on March 10, 1954, as a flagman. On that date plaintiff was riding in the cupola of a cabin car attached to a freight movement, and while the train was descending a grade the cabin car was jerked causing the plaintiff to strike his head against a window glass. Subsequently, thereafter, he developed severe headaches, blurring of vision, and temporary loss of vision.

He was admitted to a hospital for a period of 7 to 10 days after the symptoms developed and a few months later was admitted to another hospital for treatment and diagnosis. It was discovered that as a result of this accident he suffered brain damage with a resulting loss of vision in the upper right-hand field of both eyes. The headaches that he experienced have persisted to the time of trial and in varying degrees.

As a result of this accident the defendant had a loss of $986.80 of which $360 was lost wages, and the balance is hospital and medical bills up to the time of trial.

He is unable to do the work of a flagman or brakeman which he had previously performed prior to the accident. However, since that time he has qualified as a train dispatcher and is performing that work at present, and is earning more as a train dispatcher than he had previously earned.

There was considerable testimony as to the extent of plaintiff's injuries by physicians called by both the plaintiff and the defendant.

Just prior to the beginning of the trial the defendant admitted liability and the trial proceeded along the issue of damages. The jury found that the plaintiff had suffered damages in the amount of $45,000. The defendant has moved to set aside the verdict of the jury and to grant it a new trial for various reasons. The defendant first urges that the verdict was so grossly excessive as to represent a miscarriage of justice.

"'A court should not set aside a verdict on the ground that it is excessive unless it is so high as to shock the conscience. In the absence of any showing that the jury was biased or acted capriciously or unreasonably, it will not interfere with the verdict.' Foresman v. Pepin, D.C.E.D.Pa.1946, 71 F.Supp. 772,

775." See also Tomaine v. Pennsylvania R. Co., D.C.W.D.Pa.1956, 144 F.Supp. 445, 447.

■ Defendant complained that the damages are excessive under the circumstances, and while it is true that the plaintiff's out-of-pocket expenses amounted to only $986.80, under all the facts developed in this case this Court is not of the opinion that the jury acted capriciously or unreasonably.

The jury was charged on the standard that they should use in considering pain, suffering, and inconvenience past and present. The plaintiff, himself, as well as his witnesses, and the defendant's doctors testified as to the inconvenience he experienced due to the loss of vision and the reality of the pain and headaches that he had.

■ There is no exact equivalent that can be used to set the value of pain and suffering. It is left for the jury. There is no doubt and it is admitted by all the parties that the loss of vision is permanent and will continue so there will obviously be pain, suffering, and inconvenience in the future. Whether the loss of vision will progress or not in the future was disputed by the defendant and that issue was properly submitted to the jury.

■ The defendant also complains that the verdict was excessive because there was no evidence to submit to the jury on which they could find a future loss of earning power. However, with this we cannot agree. This Court heard the testimony of the plaintiff and was able to observe the plaintiff personally. He was a fine young man who impressed this Court as a man who would be a good worker and a proficient worker. This is clearly evidenced by his rise in a period of a few years from the job of a flagman to brakeman to conductor and into the job of a train dispatcher. The jury could well find that had this man not been injured his rate of advancement on the railroad might even have been greater. He is an intelligent man and had not this injury struck him he could have undoubtedly gone far in railroading. However, with this present injury he cannot perform most of the jobs for which he had training, and the mere fact that he is earning a little more on the present job than he was earning on the job that he performed prior to the accident is certainly not conclusive proof that his earning power has not been impaired.

"Damages for loss of *earning capacity* arise out of an impairment of that capacity, and not out of loss of *earnings.* The earnings of the plaintiff subsequent to the injury, as compared with his earnings at the time of the injury, are merely evidence, but not conclusive evidence, as to whether his earning power has been diminished by the accident. The matter was clearly for the jury." Saganowich v. Hachikian, 1944, 348 Pa. 313, 316, 35 A.2d 343, 345.

Defendant also complains that the Court erred in submitting to the jury the question of future hospital and medical care. Dr. Weill testified that there was a probability that there might have to be some surgical interference necessary as a result of the scarring of the brain tissue that this plaintiff suffered as a result of the brain injury. The defendant took exception to this testimony. The Court told the jury that the plaintiff would also be entitled to recover for any future treatment reasonably certain to be required. The matter was properly left to the jury's determination and there was evidence to submit this question to the jury.

■ The defendant urges that it should be entitled to a new trial because it was surprised and substantially prejudiced by the testimony of Dr. David Weill. However, before the testimony was given by Dr. Weill, to which the defendant objects as being a surprise to it, the matter was discussed with the Court. At that time after considerable discussion the Court did not feel that the testimony to be given was a matter of surprise. However, it did grant the defendant an opportunity to have an additional examination made of the plaintiff

in order that it could rebut any testimony that Dr. Weill might offer. However, the defendant failed to offer any additional testimony to rebut the testimony of Dr. Weill. The Court afforded the defendant a reasonable opportunity to have an additional examination made even though it was of the opinion that there was no surprise on the issue of brain damage. The Court, in fact, recessed early one morning in order to permit the defendant to contact additional doctors. The defendant advised the Court through its counsel just prior to the conclusion of the trial that it would not make arrangements for any further medical examinations because examinations that could be given would not be of any value. Therefore, they rested. This Court cannot see how the defendant was surprised or prejudiced by the opinion testimony of Dr. Weill when it was given a reasonable opportunity to rebut it but failed to take advantage of such opportunity.

■ The defendant also seeks a new trial for the reason of the Court's refusal to strike the opinion testimony of Dr. David Weill, which testimony contained a prognosis of possible future consequences which the plaintiff might suffer. It is uncontested that Dr. Weill is a physician licensed to practice medicine in the State of Pennsylvania. However, the defendant urges that the Doctor did not have the necessary information to make a valid diagnosis and prediction in reference to the plaintiff. It urges that his testimony was predicated on an inadequate factual basis. The Doctor testified that based on the history, the observation, and the laboratory findings it was his opinion that the plaintiff has an organic brain lesion as a result of an injury and that the lesion is probably one of scarring or scarring with cyst formation. The Doctor went on to testify that the probability of a man having an injury of such a nature besets him with a lot of difficulties, namely that his vision would not return, and the presence of the scar lays him open to damage and danger in the future as this scar undergoes changes; that his blindness will continue; and that the symptoms of dizziness and headaches that he has will continue; and that he faces a probability of surgical interference. The Doctor pointed out that a professional judgment is reached on the basis of history, physical findings from examination, and laboratory tests, and such professional judgments are what a physician would act upon in the practice of his profession.

■ The defendant urges that a question calling for the witness' opinion on the basis of laboratory reports and the history he received, this physician not being the treating physician, is not competent evidence. While it is true that some courts have restricted the opinions of physicians under such conditions, Professor McCormick in his recent work points out that such restrictions on the testimony of an expert called to testify seems unjustified. They assume that the greater number of plaintiffs will give an untrue history to the doctor called to testify and the majority of such doctors will rely on such untrue statements. They assume further that the existence of an interest to falsify is a sufficient reason for exclusion of testimony, which is the philosophy, now discredited, of the common law disqualification of witnesses for interest. Professor McCormick urges:

"* * * that an expert in a science is presumably competent to judge of the reliability of statements made to him by other investigators or technicians. * * * If the statements, then, are attested by the expert as the basis for a judgment upon which he would act in the practice of his profession, it seems that they should ordinarily be a sufficient basis even standing alone for his direct expression of professional opinion on the stand, and this argument is reinforced when the opinion is founded not only upon such reports but also in part upon the expert's firsthand observation." McCormick on Evidence, p. 33 (1954).

The defendant urges that the witness was not competent to testify because he was not a neurologist. However, Dr. Weill is a licensed physician and has had considerable experience in the diagnosing of cases. The defendant has been unable to show any case in any court where a competent physician has been barred from testifying because he was not a specialist. His lack of specialization could be argued to the jury as affecting the weight of his testimony, but his training as a physician and his experience in diagnostic work renders him competent to give an opinion.

This Court feels that a fair trial was held and in its judgment the testimony most helpful to the plaintiff's case and perhaps most damaging to the defendant's case was given by the defendant's witness, Dr. Murray McCaslin, who was acknowledged by all parties as one of the leading ophthalmologists in the State of Pennsylvania. His testimony definitely established that there was brain damage. It definitely established that there was a loss of vision. He explained to the jury the problems that the plaintiff suffered and the experiences he received by the loss of vision. He explained what happened to the brain when it was injured. He explained that the headaches that the plaintiff complained of were not uncommon, that they were post-traumatic headaches, and that the headaches could be very severe, their frequency or infrequency depending on the individual. He also pointed out that with the type of defect the plaintiff had he would have to move his head in order to see the directions in which he had the blind spots, that mere movement of the eye itself would not compensate for the loss of vision. In fact, he stated that the plaintiff should not return to his former job as a brakeman and that he could not do that type of work.

While this Court has no way of knowing just what testimony of what witnesses the jury believed and placed the greatest reliance on, it is of the opinion that the jury probably placed great reliance on the testimony of Dr. McCaslin, the defendant's own doctor, whose frank and fair testimony made it clear to the jury the extent of the injury and suffering that the plaintiff has and will undergo.

The defendant in the Court's opinion was not prejudiced by any testimony given by Dr. Weill. The plaintiff suffered real injuries, and the jury awarded him substantial sums of money as a result of these injuries. Therefore, the defendant's motion for a new trial should be denied.