602 A.2d 917

**Lawrence B. ROBINSON and City of Philadelphia, Appellants,**

v.

**Clarence JACKSON, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1991.

Decided Jan. 27, 1992.

Petition for Allowance of Appeal Denied July 31, 1992.

212

Miriam B. Brenaman, Divisional Deputy In Charge of Appeals, for appellants.

Anthony Witlin, for appellee.

Before PALLADINO and SMITH, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

This is an appeal by the City of Philadelphia from a judgment on a (molded) verdict against it for $500,000.00 [1] plus delay damages in the amount of $144,503.01 (total $644,503.01). The City alleges an error in the trial court's

---

1. The original verdict was $750,000.00.

refusal to grant its post-trial motion for a new trial or judgment n.o.v.

The facts of the accident are uncomplicated. On May 3, 1983, Clarence Jackson, a 37–year old man, stopped at a red light when his car was struck in the rear by a vehicle driven by Robinson, a City employee in the course and scope of his employment. Jackson claimed that he sustained a painful and permanent injury to his back which caused a serious impairment of his earning capacity both in the past and in the future. The City, on the other hand, contended that his injuries were minor, certainly not permanent and that he had no or little loss of earnings. Thus, the main controversy in the case was a medical issue.

In the course of his treatment and the preparation for trial of his case, Jackson saw a number of doctors. Dr. Abney, his principal doctor, was an osteopathic physician, general practitioner and his treating physician. He treated Jackson on the day of the accident, referred him to a neurologist and an orthopedist, and had him admitted to a hospital about a month and a half after the accident. Dr. Abney discharged plaintiff in 1983, but Jackson returned in 1984. He was again treated and referred to another neurologist who saw him again in December 1987, and gave his opinion, based on all the reports and his treatment, that the plaintiff had a permanent condition caused by the accident.

There are two other medical experts whose opinions are important to an understanding of the controversy involved in this case. The first is Dr. Piacente, a neurologist who, at the request of the City, examined Jackson on October 21, 1987 and reported, in summary:

> I am impressed that Mr. Jackson is a credible historian, and that he is experiencing low back pain. In addition I find spasm. And were he my patient I would caution him against heavy lifting, even if his symptoms were to resolve. I believe that Mr. Jackson is disabled, only to the extent that he should not perform any heavy lifting. Since there has been no resolution in over four years, I would expect that this limitation would be permanent.

There is no convincing evidence of neurologic injury, and he is not a candidate for surgery.

This witness was never called to testify by either side.

The second witness was Dr. Martin Blaker, who also examined Jackson on behalf of the City on October 26, 1987, after the City received Dr. Piacente's report. Dr. Blaker found no objective residual effects of any injury from the accident of May 3, 1983. Dr. Blaker testified on behalf of the City that the plaintiff was a perfectly well person and could go to work without restrictions.

On appeal, the City makes the following arguments:

(1) The testimony of plaintiff's physician, Dr. Abney, was too insufficient on the question of causation (between the accident and the plaintiff's injury) to permit the jury to decide this issue.

(2) It was error to permit the use of Dr. Piacente's report since it was hearsay.

(3) The trial judge misconstrued Dr. Blaker's testimony. This error, plus the admission of Dr. Piacente's findings, resulted in an award based on passion and prejudice.

(4) The trial judge erred in the award and calculation of delay damages against the City.

## I

The argument that there was insufficient medical testimony on causation is easily answered and rejected. The law requires that the medical testimony be reviewed in its entirety and there is no doubt that Dr. Abney testified that, in his opinion, the accident was the cause of plaintiff's continuing pain and discomfort. Dr. Abney testified as follows:

THE COURT: Let me find out how he is using the words, you cannot make any assumptions or guesses. What is your opinion to a reasonable degree of medical certainty?

THE WITNESS: It is my opinion to a reasonable degree that the accident caused this.

MR. KARPINK: Caused what, Your Honor?

THE WITNESS: Caused means the current problems that exists now, the bulging disc and Mr. Jackson's continued pain and discomfort.

Again:

THE COURT: What is your opinion, to a reasonable degree of medical certainty, between the accident of 5–3–83 and that present condition?

THE WITNESS: My opinion is that the accident obviously brought on the problem that we are dealing with today; that's my opinion. It is the key factor in the whole chronology of this experience that has brought us to the determination where we are now, that's my opinion.

(Notes of Testimony, 2/29/88, p. 4.80)

It is true, as the City argues, that the doctor referred to other factors such as aging and arthritis, but he never retreated from his conclusion that with reasonable certainty the accident was the cause of Jackson's disability. His testimony was for the jury, and they obviously believed him.

## II

The second ground for error alleged by the City presents the frequently occurring problem of how far a medical witness can go in relying upon and testifying about other doctors' opinions and findings in the reports he has received. Specifically, the City contends that it was error to permit Dr. Abney to rely on Dr. Piacente's report.[2]

2. There is considerable doubt about whether the City properly objected to this admissibility of the testimony regarding the report on this ground. There were many objections to Dr. Abney's testimony on the grounds that he was exceeding the scope of his report, citing Rule 4003.5 of Rules of Civil Procedure. But that argument was amply answered by the trial judge in his opinion and is not now raised on appeal and so will not be discussed. However, we have reviewed the entire testimony of Dr. Abney and find that many questions concerning the report and its contents were answered without an objection. Also, the report itself was offered and admitted into evidence without objection. (N.T., 2/29/88, p. 4.180)

There is no doubt that Dr. Piacente's report was hearsay. But that fact alone does not answer the question of whether what occurred in this case was error.

Until 1971, the law of the Commonwealth of Pennsylvania was that an expert could not offer an opinion which was based on evidence not in the record. *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), changed that law and stated:

> In Pennsylvania, our cases have heretofore ruled that an expert may not state a conclusion which is based on evidence not in the record. See *Murray v. Siegal*, 413 Pa. 23, 195 A.2d 790 (1963), and cases cited therein. However, several jurisdictions influenced by the teaching of highly regarded legal commentators have recognized an exception to this rule and have permitted medical witnesses to express opinion testimony on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession. See *Brown v. United States*, 126 U.S.App.D.C. 134, 375 F.2d 310 (1967); *Jenkins v. United States*, 113 U.S.App.D.C. 300, 307 F.2d 637 (1962); *Taylor v. Monongahela Ry.*, 155 F.Supp. 601 (D.C.W.D.Pa.1957), affirmed per curiam, 256 F.2d 751 (3d Cir.1958); *Sundquist v. Madison Ry.*, 197 Wis. 83, 221 N.W. 392 (1928); *Schooler v. State*, 175 S.W.2d 664 (Tex.Civ.App.1943); and *Gray v. Bird*, 380 S.W.2d 908 (Tex.Civ.App.1964). See also 3 Wigmore, Evidence § 688 (3d ed.1940); McCormick, Evidence § 15 (1955).

As Professor Wigmore explains, "where the information is that of an attending nurse or physician having personal observations and an interest in learning and describing accurately, there seems to be every reason for admitting testimony based in part on this." 3 Wigmore, Evidence § 688(4) (Chadbourn Revision).

It appears to us that the foregoing limited exception is wise and salutary, hence we adopt it as the law in Pennsylvania.

*Id.*, 444 Pa. at 445, 282 A.2d at 698–699.

This exception was recognized in *Cooper v. Burns*, 376 Pa.Superior Ct. 276, 545 A.2d 935 (1988), where the plaintiff's expert was also allowed to rely upon a psychiatrist's report diagnosing a depression. The Court said "[t]his was within the *Thomas* exception." The exception has also been applied in decisions of this Court. *Christy v. Darr*, 78 Pa.Commonwealth Ct. 354, 467 A.2d 1362 (1983).

In support of the argument that it was error to permit reference to Dr. Piacente's report, the City cites a second holding in *Cooper*. The circumstances of that holding are clearly distinguishable from the situation now before this Court. In *Cooper*, the doctor testified about the conclusion of another expert who apparently had seen the patient in the course of treatment and whose opinion merely confirmed the testifying expert. In the present case, Dr. Piacente examined Jackson on behalf of the City. Dr. Abney, the testifying physician, was a general practitioner; Dr. Piacente was a neurologist. It certainly was not surprising and was indeed realistic that this general practitioner was impressed and relied upon an opinion on permanency from an expert who examined Jackson on behalf of the party contesting Dr. Abney's conclusion.

Based on the circumstances of this case, we hold that it was not error for the trial judge to permit the references to the report of Dr. Piacente under the exception to the hearsay rule pronounced in *Thomas* and its progeny.[3]

**3.** One additional matter deserves comment. In a footnote in its brief the city states:

> As a matter of fact, Dr. Piacente was called to the court-room by the *plaintiff's* attorney, who was fully informed that the defense did not intend to call the witness. The plaintiff's counsel dismissed the doctor, who was doubtless prepared to testify according to his report that, yes the condition was permanent, but no the accident was not the *cause*. (Appellant's brief, p. 30) (emphasis in original.)

## III

■ The third ground alleged for error is that the verdict was the result of a combination of the hearsay report (Piacente report) and the trial judge's prejudice against the defendant's medical witness. Since this Court has already disposed of the arguments relating to the references to the Piacente report in the plaintiff's case and held that they were not error, we need not discuss those matters any further.

The scenario for the use of Dr. Piacente's report on cross-examination was this. The City sent the plaintiff to Dr. Piacente for an examination, which he conducted on October 21, 1987 and on which he made the report referred to above. Understandably not satisfied with that report, the City then sent the plaintiff to Dr. Blaker, who examined him on December 26, 1987. (N.T., 3/1/88, p. 5.24). In addition, the City sent Dr. Blaker the report of Dr. Piacente. Dr. Blaker testified that Jackson had no residual difficulty and that he reviewed these records "very carefully." He concluded that Jackson had full range of motion and that "he is a healthy young man as far as his neck and back are concerned ..." (N.T., 3/1/88, p. 5.41). He was then asked how many times the City had Jackson examined and he said "I don't know overall, I only know about myself." He also denied any knowledge of the examination by Dr. Piacente. He was asked specifically "Do you know whether or not shortly prior to your examination the City had him examined by a Dr. Piacente who gave the City a report? And he answered: "I don't know anything about it." (N.T., 3/1/88, p. 5.46).

We have examined Dr. Piacente's report carefully and nowhere does he state categorically that "the accident was not the cause" of Jackson's condition when he examined him. Indeed, the report of the examination in 1987 indicates that Dr. Piacente found that Jackson's back condition *dated* from the May 5, 1983 accident, wherein the 1987 report states "Since there has been no resolution *in over four years,* I would expect that this limitation would be permanent." (emphasis added.) Thus, Dr. Piacente relates the unresolved back condition to its origin four years earlier. Contrary to the city's assertion, it is *not* at all free from doubt that Dr. Piacente was prepared to testify that the 1983 accident did not cause Jackson's disability.

The report of Dr. Piacente was then discovered in his papers by the judge's law clerk. It also had a note on it written by the assistant city solicitor which read "Don't mention Dr. Piacente's report at all just review for (illegible) Thanks."

It was under these circumstances that the Court permitted a cross-examination of Dr. Blaker about the report and about the contradictions in it with Dr. Blaker's previously stated opinion that, in essence, the plaintiff had no physical disabilities.

The report and references to it were obviously relevant to show why Dr. Blaker disclaimed any knowledge of a report which was found in his file and which directly contradicted his opinions. It was also relevant and competent to point out to the jury the incredible testimony that Dr. Blaker forgot this report, that he was directed to "just review and not mention in his report." There was no error.

The City devoted much space in its brief to the trial judge's attitude toward Dr. Blaker, expressed in observations in the court's opinion in support of its order denying a new trial. These observations are irrelevant to the conduct of the trial. We have examined the record of the trial and find that the trial judge exercised considerable restraint when the incident arose concerning Dr. Blaker, the Piacente report, and the note by the city solicitor. Certainly, the attitude of the trial judge had nothing to do with the verdict, and we find no error.

## IV

■ The City's next argument is that the Court erred in imposing delay damages against the City pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure. The City makes two arguments in support of the proposition that no delay damages at all were recoverable. It first argues that under Section 8542 of the Judicial Code, 42 Pa.C.S. § 8542, the City is not liable for delay damages. This question has been settled by this Court and the Supreme Court in *City of Pittsburgh v. Pivirotto*, 93 Pa.Commonwealth Ct. 563, 502

A.2d 747 (1985) aff'd per curiam, 515 Pa. 246, 528 A.2d 125 (1987). As a corollary to its first argument, the City maintains that even if it is responsible for delay damages, such damages may not be added to the $500,000 limit of liability in the statute. This argument was rejected by this Court in a suit against the Commonwealth in *Lyles v. City of Philadelphia*, 88 Pa.Commonwealth Ct. 509, 490 A.2d 936 (1985), where the trial court was directed to add delay damages to the then limitation of $250,000. The *Lyles* decision was also affirmed by the Supreme Court, 512 Pa. 322, 516 A.2d 701 (1986). We see no reason for making a distinction in this case between the Commonwealth and the City.[4] Therefore, we hold that delay damages can be assessed against a local agency or governmental body even where the verdict or modified verdict is for the statutory limits of damages.[5]

The *computation* of the delay damages is another matter. There is nothing in the record to show precisely how the court computed the delay damages. More importantly, the City alleged that there were certain periods during which the plaintiff caused the delay of the trial and therefore was not entitled to delay damages for those periods. Rule 238 provides that a plaintiff may not recover delay damages for any period where he was the cause of the delay. The trial judge did not consider this averment. That is his task under the rule.

We therefore will remand for a computation of delay damages. The order of the trial court is affirmed insofar as it denied a new trial. The order of the trial court as to the

---

**4.** The Supreme Court has instructed that those sections of the Judicial Code governing local government immunity are to be given a similar construction to those governing sovereign immunity. *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989).

**5.** The City also makes some procedural arguments about the delays in filing for delay damages and miscalculations in plaintiff's petition for delay damages, but the trial judge did not find that these allegations were sufficient to deny the imposition of any delay damages, and we agree.

computation of delay damages is vacated and remanded for a new computation of delay damages.

## ORDER

AND NOW, this 27th day of January, 1992, the order of the Philadelphia Court of Common Pleas dated May 31, 1990, at No. 6385, July Term, 1984, is affirmed insofar as it denied defendant's motions for a new trial and for judgment n.o.v.. Said order is vacated insofar as it assessed delay damages in the amount of $144,503.01 and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.