**Osborne v. Cambridge Twp.**

C.P. of Crawford County, no. A.D. 1995-642.

*Louis M. Tarasi Jr.* and *Christina K. Hurnyak,* for plaintiff.
*John O. Dodick,* for defendant.

VARDARO, *J.,* September 14, 1998—The matter before this court arises from an action brought under provisions of Pennsylvania's Wrongful Death and Survival Acts by the plaintiff, Jeanette M. Osborne, in her capacity as administratrix of her husband's estate. The claims were brought against the defendant, Cambridge Township, as a result of a fatal motor vehicle accident which occurred on a township roadway. It was alleged at trial that the defendant was negligent in its failure to take measures to warn of a large tree which had fallen across one of its roads and for which the township had timely notice of. The decedent was killed instantly when the automobile he was driving struck the fallen tree. The plaintiff's claims were tried before a jury which returned a verdict in her favor for an aggregate total of $3,892,243.20. Negligence was established at 25 percent for the decedent and 75 percent for the defendant. The defendant has filed motions for judgment n.o.v., new trial, remittitur, and a molding of the verdict.

The plaintiff has filed a motion to mold verdict, award Rule 238 damages and post-verdict interest. We turn now to address these matters.

## DISCUSSION

### I. *Motion for Judgment n.o.v.*

### A. Failure To Establish Care, Custody or Control

The defendant asserts that a compulsory nonsuit or a directed verdict should have been granted in favor of the defendant because the evidence set forth at trial failed to establish that the tree which had fallen across the roadway was within the right-of-way of Cambridge Township.

The general immunity of local agencies caused by acts or omissions of the agency or its employees is provided in 42 Pa.C.S. §8541. Exceptions to the general grant of immunity are provided in 42 Pa.C.S. §8542. The specific exception alleged at trial by the plaintiff to establish liability on behalf of the defendant provides the following:

"(4) *Tree, traffic controls and street lighting.*—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting under care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." 42 Pa.C.S. §8542(b)(4).

The defendant first argues that the plaintiff failed to establish at trial that the tree which had fallen on the township's roadway was under the care, custody or control of the local agency. The fact that the tree had fallen across and upon the township's roadway, in and of itself, the defendant argues, does not establish that the tree was in the care, custody and control of the township. In primary support of this assertion, the defendant cites *Marker v. PennDOT,* 677 A.2d 345 (Pa. Commw. 1996) and *Babcock v. PennDOT,* 156 Pa. Commw. 69, 626 A.2d 672 (1993), *alloc. denied,* 536 Pa. 647, 639 A.2d 33 (1994). These cases, however, were decided under an entirely different statutory authority[1] than that under which this action was brought and turn upon distinctions irrelevant to the plaintiff's cause of action. These cases, therefore, fail to advance the defendant's argument.

The plaintiff suggests that the issue of care, custody and control was conclusively established by the fact that the township went to the scene after the accident, stopped traffic and removed the tree. We find this argument unpersuasive as well. See *e.g., Mylett v. Adamsky,* 139 Pa. Commw. 637, 591 A.2d 341 (1991) (that township police placed flares and re-routed traffic around a tree which had fallen across a state roadway did not establish that township exercised care, custody and control of tree).

Evidence which the jury could consider, however, in concluding that the subject tree was in the care, custody and control of the township were two admissions of the defendant which were read to the jury. By the parties' stipulation, the following were offered:

---

1. 42 Pa.C.S. §8522(b)(4), known as the "real estate exception" to Commonwealth immunity.

"(1) The cause of death of the plaintiff-decedent, Stephen K. Osborne, was the result of the vehicle he was operating striking a tree lying across Route T680/Center Road, Cambridge Township, Cambridge Springs, PA 16403 on July 28, 1993.

"(2) Route T680/Center Road, Cambridge Township, Cambridge Springs, PA 16403 is maintained by Cambridge Township."

At trial, the plaintiff also offered evidence that the township maintained a right-of-way which extended 25 feet in both directions from the center of Route T680/Center Road. (Tr. at 50.)[2] Therefore, at trial, evidence was provided to the jury that both the road and the right-of-way upon which the tree had fallen were maintained by the defendant. This is sufficient evidence from which the jury could reasonably conclude that the township was responsible for maintaining its roads and rights-of-way, the tree which had fallen across the township road was subject to this duty of maintenance and, therefore, the fallen tree was in the care, custody and control of the defendant.

A motion for compulsory nonsuit may only be granted where, viewing all of the evidence including all reasonable inferences which may be drawn from this evidence in the light most favorable to the plaintiff, it can only be concluded that the plaintiff has failed to establish a right to relief. 1 Goodrich-Amram 2d §230.1:4. On the evidence presented by the plaintiff, no such conclusion could reasonably be drawn. We find no case law which would require, as the defendant would suggest, that for the jury to find that the subject

---

2. References to trial transcripts are to the defendant's reproduced transcripts of proceedings which have been bound in consecutive order and not the official transcripts of proceedings.

tree was under the care, custody and control of the township that the subject tree, *before* it came to rest on township property, must have first been located on property under the care, custody and control of the township.

### B. Failure To Establish Sufficient Time To Take Preventative Measures

The defendant next argues that the evidence failed to establish that the township had actual or constructive notice of the fallen tree in sufficient time to have taken preventative measures. At trial, Mr. Styborski testified that after observing the fallen tree on the night in question, he asked his wife to call the township supervisor, Mr. Herman, to advise him of the fallen tree. (Tr. at 61.) Mrs. Styborski's testimony confirmed her husband's testimony that she had called Mr. Herman on the night in question at some time before 9 p.m. (Tr. at 84.) Mr. Styborski, however, had given a statement to an investigator, some time not long after the accident, in which he indicated that it was he who had called Mr. Herman a couple of hours before the accident had occurred. Pl. ex. 1. At the time of trial, Mr. Styborski indicated that perhaps he had made such a statement, but he may have exaggerated the time frame. (Tr. at 70.) Mr. Herman testified at trial that the first time that he was aware of the fallen tree was when he awoke to get ready for work at approximately 9:50 p.m. It was at this time, he testified, that he was informed by a phone call from Mrs. Styborski that an accident had just occurred. (Tr. at 121.) Mrs. Herman, in her deposition, had indicated that she had received a phone call from Mr. Styborski earlier on the night in question to inform Mr. Herman of the fallen tree, and that she had told her husband of the call to which he responded,

"Well okay." (Tr. at 104, 107.) At trial, however. both Mr. and Mrs. Herman denied that such a discourse took place.

The question of whether the defendant had notice was central to the outcome of this action. It is undeniable that this issue was hotly disputed. It is a well-established principle, however, that "where there is *any* evidence which alone would justify an inference of disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. . . ." *Heffernan v. Rosser,* 419 Pa. 550, 555, 215 A.2d 655, 657 (1966). (footnote omitted) (emphasis in original) Under Pennsylvania law, it is not required "that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. . . ." *Jones v. Treegoob,* 433 Pa. 225, 230, 249 A.2d 352, 355 (1969). It is not the role of the court to "weigh the evidence and to determine the truth of the matter asserted, this issue should be properly left for the jury to decide." *Taylor v. Jackson,* 164 Pa. Commw. 482, 493, 643 A.2d 771, 776 (1994).

Whether or not the township had notice of the fallen tree in time to have taken preventative measures is a question of fact. Once there is sufficient testimony to establish that the township had notice of a dangerous condition on its road, the ultimate question of the township's liability must be properly left to the jury. Although there was conflicting evidence as to the time of the notice given to Mr. Herman, it cannot be said that there was insufficient evidence from which to justify the jury's conclusion that Mr. Herman had adequate notice to have taken measures to prevent the fatal accident. *Connelly Containers Inc. v. Pennsylvania Railroad,* 222 Pa. Super. 7, 292 A.2d 528 (1972) (where material

facts are in dispute, the jury must determine which to believe); *Morris v. Peckyno,* 202 Pa. Super. 490, 198 A.2d 396 (1964) (the issue of the credibility of a witness is always a matter for the jury).

## C. Verdict Against the Weight of Evidence

The defendant next argues that the jury verdict was against the weight of the evidence on the issues of negligence and comparative negligence. In effect, the defendant asks this court to again weigh the evidence which was presented at trial and reevaluate the jury's factual findings. This we will not do. The traditional standard in Pennsylvania for purposes of a "weight of the evidence" inquiry is whether the "jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A.2d 516, 517-18 (1970). In a case where the issue of the credibility of witnesses is present, as in the instant action, the weight to be assigned the testimony of various witnesses is within the exclusive province of the jury. *Smith v. Shaffer,* 511 Pa. 421, 515 A.2d 527 (1986). Moreover, the verdict of the jury will be determinative as long as it is based on substantial, albeit conflicting evidence. *Standard Pipeline Coating Co. v. Solomon & Teslovich,* 344 Pa. Super. 367, 496 A.2d 840 (1985).

Although the preponderance of the evidence which was presented at trial was in conflict and the credibility of the witnesses often placed in doubt, such is the case in most every trial to one degree or another. We do not find, however, with regard to issues of negligence, contributory negligence or the apportionment of liability that merely because the jury could have justifiably drawn

different conclusions based upon the same evidence that the verdict was so utterly contrary to the evidence that "one's sense of justice" is shocked. The test is not whether, on the same evidence, this court could have reached a different conclusion, but only whether the jury's verdict was so contrary to the evidence that the justice demands this court provide the defendant with another opportunity to prevail. Such is not the case.

## II. *Motion for New Trial*

### D. Admissibility of Vicarious Admission

The defendant next argues that the admission of the testimony of Trace Fosberg regarding the vicarious admission of township supervisor Larry Tapper, was error. At trial, Mr. Fosberg, a former employee of the township, testified that one week after the accident, Mr. Tapper had told him that Mr. Herman, a township supervisor, had approximately one hour's notice of the fallen tree and that Mr. Herman had done nothing in response to this notice. (Tr. at 165-66.) The defendant maintains that an objection was made regarding the admissibility of the conversation that Mr. Fosberg had with Mr. Tapper. This assessment is inaccurate. The defendant objected not to a question posed to Mr. Fosberg regarding a conversation with Mr. Tapper, but to a question regarding why the township had taken no action in response to a request by Mr. Styborski to address various tree problems. (Tr. at 158.) In response to this question, defendant's counsel objected *only* that the witness was incompetent to testify as to why no action was taken by the township to address Mr. Styborski's requests. (Tr. at 158.) This court sustained the objection. Contrary to the defendant's assertion, there was no objection

made to Mr. Fosberg testifying as to his conversation with Mr. Tapper, but *only* an objection to Mr. Fosberg's competency to testify as to why the township did not respond to certain requests. In fact, a side-bar was held before Mr. Fosberg testified about his conversation with Mr. Tapper during which plaintiff's counsel indicated that the statements made by Mr. Tapper were admissions against interest to which defendant's counsel made no objection. (Tr. at 155.) As such, this matter was not objected to at trial and, therefore, this issue has been waived. *Thompson v. Motch & Merryweather Machinery Co.,* 358 Pa. Super. 149, 516 A.2d 1226 (1986).

## E. Admissibility of Township Procedure

The defendant next argues that the admission of testimony from Mr. Fosberg as to what procedure the township could have taken on the night of the accident was error. Specifically, the defendant argues that Mr. Fosberg's testimony that other means were available to react to the notice which may have provided a quicker response, was prejudicial. The defendant maintains that this testimony was prejudicial because it was speculative in nature and potentially extended the time available to the defendant to have taken preventative measures.

Mr. Fosberg was asked what procedure the township would follow if a call came in that a tree was blocking a road and that barricading was necessary. (Tr. at 177.) Mr. Fosberg's response to the question was in the first person as he explained what he believed the township's procedure would have been under the circumstances. Mr. Fosberg, at the time in question, was a township laborer who had responded to situations similar to those posed in the plaintiff's query. As such, he was qualified to respond to the question as to what means would have then been available to the township to provide

a quicker response to the notice which was given. The fact that it was answered in the first person did not, by itself, cause the answer to be speculative. Although there was no written policy which reflected Mr. Fosberg's testimony and Mr. Fosberg may have had a bias against a township supervisor, these issues go to the credibility and weight to be given to his testimony. They do not alone cause the evidence to be inadmissible or unduly prejudicial.

It is less than clear as to how the testimony of Mr. Fosberg could have extended the time available to the defendant to respond to the notice given. While the testimony of Mr. Fosberg may have established that another means of response which was available to the township could have been faster and more prudent, it certainly did not extend the time available for the township to respond.

### F. Points for Charge

The defendant next maintains that it was error to fail to charge the jury on the defendant's supplemental request for charge no. 1 regarding the unrebutted testimony of Trooper Falkenburg. The defendant's supplemental request asked for a jury instruction that if the jury found that the trooper's testimony that the decedent's vehicle was traveling at 73 mph at the time of the accident was not contradicted by direct testimony of other witnesses, impeached by its own inconsistencies, or of such improbability to not be worthy of belief, then the plaintiff would be bound by this evidence. Trooper Falkenburg testified, however, that the needle of the speedometer in the decedent's automobile may have jumped up to 73 mph upon impact. (Tr. at 42.) In addition, the defendant's own expert witness, Mr. Aerni, testified that in his opinion, the decedent's auto-

mobile, at the time of impact, was traveling between 57 mph and 87 mph. (Tr. at 395.) As such, the testimony of Trooper Falkenburg was not only internally inconsistent, but was contradicted by another defense witness.

The defendant next argues that it was error to refuse the defendant's jury point for charge requests nos. 10 and 12, which represent proper legal conclusions which were supported by the evidence. As part of the requested charge at no. 10, the defendant requested that the court instruct the jury that the defendant was contributorily negligent for operating his automobile while under the influence of alcohol to a degree which rendered him incapable of safe driving and while his alcohol content was .10 percent or greater. At no. 12, the defendant requested that the court instruct the jury that any person who drives a vehicle in reckless disregard for the safety of persons or his own safety or property is guilty of careless driving under 75 Pa.C.S. §3714, as well as a charge that a person shall not drive, operate or be in actual physical control of the movement of any vehicle while under the influence of alcohol to a degree which renders the person incapable of safe driving or while the amount of alcohol by way of blood is .10 percent or greater as provided in 75 Pa.C.S. §3731. The use of the explicit language which the defendant requested was refused. A trial judge is not required to use the exact language of a requested point as long as the form of the charge given to the jury adequately and clearly covers the subject. 10 Standard Pa. Practice §59:9. As such, a court may properly refuse a requested point where it instructs the jury correctly and the substance of the charge covers the relevant rules of law proposed by the requesting party. *Id.* The substance of the de-

fendant's requested points were covered by charges which set forth the essence of the statutory language requested in broader terms. (Tr. at 284-86.) The defendant, therefore, suffered no prejudice. See *Butler v. Kiwi S.A.,* 412 Pa. Super. 591, 604 A.2d 270 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992) (requested charge may properly be refused where the substance of the request is given in either a general charge or another specific charge).

The defendant next asserts that the court erred in not charging the jury on the issue of assumption of the risk. The defendant, at point for charge no. 15, requested that the court instruct the jury on the doctrine of assumption of risk. This request was refused. In *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), a plurality decision, assumption of risk as an affirmative defense to be decided by the jury was abolished by the Supreme Court. The court noted that "to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as part of the duty analysis, and not as part of the case to be decided by the jury." *Id.* at 162, 620 A.2d at 1112-13. Accordingly, under this approach:

"[T]he court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with awareness of *specific risks inherent in the activity* nonetheless engaged in the activity that produced his injury." *Id.* at 162, 620 A.2d at 1113. (emphasis added)

The court preserved the doctrine, however, "in cases involving express assumption of risk, or cases brought pursuant to 402(A) (strict liability theory), or cases in which assumption of risk is specifically preserved

by statute. . . ." *Id.* at 162 n.10, 620 A.2d at 113 n.10. There was no evidence presented at trial which would lead reasonable minds to agree that the decedent engaged in the conduct alleged, deliberately and with an awareness of the *specific risk* which ultimately took his life. Nor was there evidence presented which indicated that the decedent expressly assumed the risk or that a statute has been implicated in which the doctrine has been preserved. As such, the defendant was not entitled to this requested charge and the case was properly submitted to the jury on a comparative negligence theory.

### III. *Motion for Remittitur*

The defendant next maintains that the jury did not follow the court's instructions or the law in offsetting damages under the Wrongful Death and Survival Acts. The jury awarded the following under the Wrongful Death and Survival actions:

### WRONGFUL DEATH

| | |
|---|---:|
| (1) Compensation to family for loss of contributions for period from time of accident until date of verdict | $200,317.00 |
| (2) Compensations to family for loss of contributions for period from date of verdict until end of estimated life | $1,387,458.80 |
| (3) Compensation to family for pecuniary value of service, society and comfort had decedent lived | $367,411.66 |
| (4) Compensation for loss of services that decedent would have contributed to his children | <u>$500,000.00</u> |
| Total Wrongful Death Award | $2,455,187.46 |

## SURVIVAL ACT

(1) Amount decedent would have
earned between date of his death
and date of verdict                                    $200,317.00

(LESS) Amount decedent would have
contributed to family during this same
period *(awarded above under
Wrongful Death Act)*                                    $ -0-

(LESS) Amount decedent would have
spent for personal maintenance during
this same period                                       ($16,000.00)

Total incremental contributions                        $184,317.00

(2) Amount decedent would have
earned between date of verdict
and the end of his natural life                        $1,387,458.80

(LESS) Amount of contributions decedent
would have made from date of verdict until
his natural death *(awarded above under
Wrongful Death Act)*                                    $ -0-

(LESS) Amount decedent would have
spent for personal maintenance
during same period                                     ($134,720.00)

Total contributions until
natural death                                          $1,252,738.80

Total Survival Act Award                               $1,437,055.80

It was apparent from the jury's queries that there was considerable confusion as to the manner in which the different awards under each Act were to be reconciled. As one juror explained, "[w]e're so confused it isn't funny." (Tr. at 334.) Specifically, there was an apparent problem understanding why an award given under the Wrongful Death Act would have to be subtracted in the calculation of an award under the Survival

Act. As one juror stated during questions to the court, "[if] I give you two apples, you have two apples, but if I take two apples back from you, you have nothing . . . we're giving somebody a dollar bill on the first phase . . . on the second phase we're taking it back." (Tr. at 334-36.) The jury awarded the plaintiff $200,317 under the Wrongful Death Act for the decedent's contributions during the period from his death until the date of the verdict, and $1,387,458.80 for the decedent's contributions from the date of the verdict until his projected natural death. These amounts represented the decedent's entire earnings for these periods. That is, the jury, under the Wrongful Death Act, awarded the plaintiff's family the whole of the decedent's estimated earnings for all relevant periods. At this point then, there were no further financial contributions which the decedent could have provided and, consequently, no further financial contributions which the jury could have provided to his estate on his behalf. Everything the decedent may have contributed financially at any time after his death was awarded to his family under the Wrongful Death Act. When the jury awarded damages under the Survival Act, however, they failed to deduct from the decedent's projected earnings that which had been awarded under the Wrongful Death Act. As a result, the decedent's total projected earnings were awarded first to the decedent's family under the Wrongful Death Act and *again,* incorrectly, under the Survival Act. As such, the jury's award under the Survival Act cannot stand.

It was apparent from the jury's award under the Wrongful Death Act that the jury intended that the decedent's family should receive all of his projected life

earnings. With their award under that Wrongful Death Act, they accomplished this objective. We are well aware of our limited role in molding a jury's verdict. *Richards v. Dravo Corp.,* 249 Pa. Super. 47, 375 A.2d 750 (1977) (court must not invade the province of the jury). With the clear intent of the jury manifested in their award to the plaintiff's family under the Wrongful Death Act, however, it is incumbent that we correct the jury's mistake. See *Krock v. Chroust,* 330 Pa. Super. 108, 478 A.2d 1376 (1984) (where the intent of the jury is clear or obvious, the court has the power to mold the verdict); *Maize v. Atlantic Refining Co.,* 352 Pa. 51, 41 A.2d 850 (1945) (court may mold a verdict for personal injuries where there is unfairness or mistake). Therefore, the jury's award under the Survival Act will be molded to reflect a zero award. We will not, however, as the defendant suggests, offset the Wrongful Death Act award by the personal maintenance costs reflected in the Survival Act award.

The defendant next argues that the jury in calculating an offset for decedent's personal maintenance was a product of passion, prejudice and partiality. In that the jury's award under the Survival Act has been molded to reflect a zero award, we need not address this issue.

The defendant argues next that it was error to allow damages under the Wrongful Death Act for the loss of services that Stephen K. Osborne as a father would have contributed to his children, such as guidance, tutelage and moral upbringing since these are not a recognized item of damages against a local agency under 42 Pa.C.S. §8553(c). We find the defendant's argument that this court should apply a common-law construction to the damages permitted under 42 Pa.C.S. §8553(d) and deny thereby the plaintiff's recovery for the loss

of consortium of the minor children unsupported by law. See *Buchecker v. Reading Co.,* 271 Pa. Super. 35, 412 A.2d 147 (1979) (under Pennsylvania law, a child can recover in a wrongful death action for loss of companionship, comfort, society and guidance of a parent). The references which the defendant makes to cases which discuss a child's right to recover for a loss of consortium outside of the Wrongful Death Act are irrelevant as to the error asserted, and altogether unpersuasive. As such, we find this assertion to be without merit.

### IV. *Motion To Mold Verdict, Award Rule 238 Delay Damages, and Post-Verdict Interest*

The plaintiff requests that the court subtract the $5,000 first-party benefit which was received by the plaintiff from the jury's award and not the statutory cap. We find the analysis provided in *Fernandez v. City of Pittsburgh,* 164 Pa. Commw. 662, 643 A.2d 1176 (1994), to be controlling. The court in *Fernandez* expressly overruled the holding of *Giosa v. School District of Philadelphia,* 157 Pa. Commw. 489, 630 A.2d 511 (1993), which had held that insurance benefits were to be deducted from the statutory cap on liability against a municipality and not the jury's award of damages. As such, the $5,000 first-party insurance benefits paid to the plaintiff will be subtracted from the jury's award and not the statutory cap.

The plaintiff next requests that the defendant pay delay damages, in accord with Pa.R.C.P. 238, for the period from June 29, 1996 through April 24, 1998. The defendant argues, however, that to award delay damages would result in an award which exceeds the

statutory cap and would, therefore, be improper. We disagree. It is the well-settled law of this Commonwealth that delay damages are to be calculated upon a jury's award and not the statutory cap. *Woods v. PennDOT,* 531 Pa. 295, 612 A.2d 970 (1992). To hold otherwise would frustrate the legislature's goal of encouraging settlements, providing "no incentive for a Commonwealth agency to seek a settlement of a major suit. . . ." *Id.* at 300, 612 A.2d at 972. Moreover, "there would be a distinct disincentive since the delay damages would be based upon a predictable constant and there would then be no unknown which would motivate the Commonwealth to discuss settlement." *Id.* As no distinctions are made in the award of delay damages between the Commonwealth and a local agency of government body, delay damages will be awarded on the jury's verdict and not the statutory cap. See *Robinson v Jackson,* 145 Pa. Commw. 211, 602 A.2d 917 (1992) (delay damages can be assessed against a local agency or government body even where the verdict or modified verdict is for the statutory limits of damages).

The defendant asserts that the plaintiff is not entitled to delay damages, as provided by Pa.R.C.P. 238(b)(2), for the period from February 1998 to April 1998 because this period is attributable to the plaintiff's motion for continuance. The plaintiff argues that the defendant's request be denied because at the time of the request for continuance, the defendant had not complied with the plaintiff's discovery demands. Our re-examination of the record, however, reveals that the request for a continuance which was filed by the plaintiff was in the nature of a stipulation for continuance that was signed by counsel for the defendant. As such, the de-

fendant, by stipulation, has effectively waived the right to assert this issue.

Lastly, the plaintiff requests that this court apply separate liability limits for each award given by the jury under the Wrongful Death and Survival Acts. We need not address this issue, as the Survival Act award will be molded to reflect a zero recovery.

## ORDER

And now, September 14, 1998, the defendant's request for post-trial relief is denied except that its motion for remittitur is granted with respect to the award under the Survival Act, which is hereby established at zero.

The jury's wrongful death verdict is molded as follows:

The verdict of $2,455,187.46 is reduced by the comparative negligence of the decedent of 25 percent, resulting in an initial verdict of $1,841,390.60. From that amount is subtracted $5,000 for first-party insurance benefits paid.

Delay damages are calculated therefore on the sum of $1,836,390.60.

Those damages are calculated at 9 1/2 percent for 186 days from June 29, 1996, to December 31, 1996, for a total of $88,901.43 during that time period. In addition, there are delay damages calculated at 9.25 percent from January 1, 1997 through December 31, 1997, for a total of $169,866.13.

Finally, from the period from January 1, 1998 through April 24, 1998, which is 114 days, the delay damages are calculated at 9.5 percent or $54,487.97.

The total delay damages therefore are $313,255.53 and the verdict is reduced to the statutory cap of $500,000 plus delay damages for a total verdict of $813,255.53, and the prothonotary is directed to enter judgment for this amount in favor of the individual plaintiff and against the defendant, Cambridge Township, together with costs and statutory interest at the rate of 6 percent from the date of the verdict.